# EXHIBIT A

2023 WL 8601528
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.

Innazia MOORE, individually and on behalf
of all others similarly situated, Plaintiff,
v.
TRIUMPH CSR ACQUISITION, LLC, Defendant.

Case No. 23-cv-4659
|
Signed December 12, 2023

**Attorneys and Law Firms**

Avi Robert Kaufman, Kaufman P.A., Coral Gables, FL, Juneitha S. Shambee, Shambee Law Office, Ltd., Evanston, IL, for Plaintiff.

Ollie A. Cleveland, III, Pro Hac Vice, Maynard Nexsen PC, Birmingham, AL, David E. Morrison, Goldberg Kohn Ltd., Chicago, IL, for Defendant.

**MEMORANDUM OPINION AND ORDER**

Steven C. Seeger, United States District Judge

 **\*1**  Unwanted robocalls are the technological equivalent of a pesky fly at a picnic. They buzz around, drive people nuts, and won't seem to go away despite everyone's best efforts. That's why Congress handed a fly swatter to recipients of unsolicited calls in the form of the Telephone Consumer Protection Act. Both the swatter and the statute have a way of leveling the playing field.

Plaintiff Innazia Moore had trouble shooing away calls from Defendant Triumph CSR Acquisition LLC, a culinary arts school. She received dozens of unwanted, prerecorded calls to her cell phone without her consent, and she now seeks to swat the defendant under the Telephone Consumer Protection Act. Triumph CSR Acquisition LLC, in turn, moved to dismiss. The motion to dismiss (Dckt. No. [8]) is hereby granted in part and denied in part.

The case is about dozens of telephone calls that Moore received from May to July 2023 from phone numbers associated with Auguste Escoffier (that's the d/b/a of Triumph CSR Acquisition LLC). The claim is that Auguste Escoffier kept calling and calling Moore's personal cell phone to entice her to sign up for culinary arts classes.

According to the complaint, Moore originally received a call from an Auguste Escoffier employee in March 2023 about signing up for culinary arts school. *See* Cplt. at ¶ 23. Maybe Moore is already a good cook, or maybe she doesn't like cooking. Maybe the cooking classes were too expensive, or maybe there was some other reason why she had no appetite for cooking classes. Whatever the reason, Moore responded that she was not interested in signing up, and she asked the calls to stop. *Id.* at ¶ 24. She even asked that the company place her on a do-not-call list. *Id.*

That request fell on deaf ears. But Moore received an earful. In the months that followed, Moore received over 30 unsolicited calls to her cell phone from Auguste Escoffier. *Id.* at ¶ 25. The majority of the calls were received as "pre-recorded voicemails," many of which left "incomplete and identical voicemails." *Id.* at ¶ 26.

"Plaintiff Moore believes the voicemails were pre-recorded because the messages sound identical with the same voice, same words, same intonation and the same speech pattern. In addition, many were incomplete, either containing the last segment of a message, as per the above screenshots, or the messages are cut off at the end in the middle of a sentence." *Id.* at ¶ 27.

Unhappy with the calls, Moore turned the tables and started calling the shots by suing Triumph CSR Acquisition. She originally brought two claims under the Telephone Consumer Protection Act, but she later dropped Count II (meaning the do-not-call claim under 🚩47 U.S.C. § 227(c)(5)). *See* Plaintiff's Notice of Voluntary Dismissal of Count II Only (Dckt. No. [12]). She brings the case on her own behalf, and on behalf of a putative class.

The only remaining claim is Count I. Plaintiff alleges that Triumph CSR Acquisition violated § 227(b)(1)(A)(iii) and § 227(b)(1)(B) of the TCPA by making unwanted calls and leaving prerecorded messages on her cell phone.

 **\*2**  Defendant, in turn, moved to dismiss on two grounds.

First, Triumph CSR Acquisition argues that Moore has no claim under subsection 227(b)(1)(B) based on calls to her cell phone, because that provision applies only to a "residential telephone line." That provision prohibits making a call to "any

residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." See 47 U.S.C. § 227(b)(1)(B).

A neighboring provision, subsection 227(b)(1)(A)(iii), expressly covers "cellular telephone service," but subsection 227(b)(1)(B) does not. The fact that the statute uses "residential telephone line" and "cellular telephone service" in close proximity is a strong clue that the two terms do not mean the same thing. *See Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1939 (2022) (applying the "usual rule against ascribing to one word a meaning so broad that it assumes the same meaning as another statutory term"); *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 86 (2017) ("[W]hen we're engaged in the business of interpreting statutes we presume differences in language like this convey differences in meaning."). The text and structure of the statute suggest that the different terms have different meanings.

A cellular phone and a residential phone are not the same thing. The Supreme Court took that distinction as a given in *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335 (2020). That case involved robocalls to a cell phone in violation of subsection 227(b)(1)(A)(iii) of the TCPA, meaning the same provision at issue here. The Supreme Court noted that a different provision governs calls to residential phones. *Id.* at 2345 n.3 ("Plaintiffs have not challenged the TCPA's separate restriction on robocalls to home phones. *See* 47 U.S.C. § 227(b)(1)(B).").

Courts widely hold that a cell phone is not a "residential telephone line" within the meaning of subsection 227(b)(1)(B). *See, e.g.*, *Morris v. Lincare, Inc.*, 2023 WL 5336780, at *4 (M.D. Fla. 2023) ("It is worth noting that courts use 'home phone' and 'residential telephone' to refer to the TCPA's language 'residential telephone line.' While these terms are used by courts interchangeably, they are distinct from cell phones."); *Morgan v. U.S. Xpress, Inc.*, 2018 WL 3580775, at *1 (W.D. Va. 2018) ("[T]he structure and language of the TCPA demonstrate that calls made to a cell phone are not calls made to a 'residential telephone line.' "); *Worley v. Municipal Collections of America, Inc.*, 2015 WL 890878, at *3 (N.D. Ill. 2015) ("One provision of the TCPA prohibits certain calls to cell phones, see 47 U.S.C. § 227(b)(1)(A)(iii), and another provision prohibits certain calls to residential phone lines, see 47 U.S.C. § 227(b)(1)(B).").

Some people live on their phones. (Take a look at the nearest teenager.) Some people practically take up residence on their cell phones. But even the strongest addiction to a cell phone cannot transform it into a residential phone. A residential phone is a home phone that is hard-wired into the building. It means a land-line. It is *residential* in a very literal sense.

**\*3** The text of the statute reflects common parlance and natural usage. A cell phone is not a residential phone. So any calls to a cell phone cannot violate subsection 227(b)(1)(B). Count I is dismissed to the extent that it alleges that any calls to Plaintiff's cell phone violated the prohibition about residential phones under subsection 227(b)(1)(B).

Second, Triumph CSR Acquisition contends that the complaint does not plausibly allege that the calls were prerecorded. Defendant points out that the complaint identifies 38 calls, but offers content from the voicemails of only 3 of the 38 calls. Triumph CSR Acquisition also believes that there is reason to doubt that the calls were prerecorded. For example, some of the calls came from different states, and in Defendant's book, the geography "undermines Plaintiff's theory" that the calls had the same voice. *See* Mtn. to Dismiss, at 9 (Dckt. No. [8]).

The complaint offers more than enough, and then some, to state a plausible claim that Defendant received unwanted prerecorded calls. To wit: (1) the messages sounded identical, (2) had the same voice, (3) used same words, (4) had the same intonation, (5) had the same speech pattern, (6) were commercial, (7) were generic (*e.g.*, didn't identify Plaintiff by name), (8) were unsolicited, (9) were incessant, and (10) continued despite Plaintiff's express request that the calls stop. *See* Cplt., at ¶¶ 26–28, 30–31. That's a lot of reasons to think that the calls were prerecorded.

Maybe Triumph CSR Acquisition can point to facts that undermine Moore's theory of the case. And maybe the calls weren't robocalls at all. But that's the stuff of a motion for summary judgment, not a motion to dismiss.

In sum, the motion to dismiss is granted in part and denied in part. The motion is granted to the extent that Plaintiff purported to bring a claim about calls to her cell phone under the provision about residential phones, meaning subsection 227(b)(1)(B). The motion to dismiss is denied to the extent that the complaint brings a claim under subsection 227(b)(1)(A)(iii).

**All Citations**

Slip Copy, 2023 WL 8601528

**End of Document**  © 2024 Thomson Reuters. No claim to original U.S. Government Works.