UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAXX LYMAN,<br><br>             Plaintiff,<br><br>   v.<br><br>QUINSTREET, INC.,<br><br>             Defendant. | Case No.  23-cv-05056-PCP<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 22 |

In this putative class action, plaintiff Maxx Lyman alleges that defendant QuinStreet violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et seq.*, when it made telemarketing calls to solicit potential insurance customers by contacting numbers on the National Do Not Call Registry ("Do Not Call Registry"). According to Mr. Lyman, QuinStreet's acts and omissions were negligent, willful, or knowing.

Before the Court is QuinStreet's Rule 12(b)(6) motion to dismiss Mr. Lyman's complaint for failure to state a claim. QuinStreet argues that Mr. Lyman cannot establish a claim under Section 227(c) of the TCPA because his phone number "is connected to a cell phone" and is therefore "not a 'residential telephone'" under the statute. For the following reasons, the Court denies QuinStreet's motion.

**BACKGROUND**

**I.     Facts[1]**

Maxx Lyman commenced this putative class action against QuinStreet seeking both injunctive relief and damages on October 3, 2023. Compl., Dkt. No. 1, at 1, 7. Mr. Lyman seeks to

---

[1] For the purposes of QuinStreet's Rule 12(b)(6) motion, the Court assumes the truth of the allegations in Mr. Lyman's complaint.

represent a class of "[a]ll persons in the United States whose (1) residential telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call[] from or on behalf of Quinstreet (3) within a 12-month period (4) from the four years prior to the filing of the complaint through the date of trial." *Id. ¶¶* 3, 27. QuinStreet is a corporation headquartered within the Northern District of California. *Id.* ¶ 4. QuinStreet provides insurance services and both owns and operates the website insurance.com. *Id.* ¶¶ 21–22.

Mr. Lyman alleges that QuinStreet has engaged in a telemarketing campaign to market and solicit its insurance services by contacting numbers on the Do Not Call Registry in violation of the TCPA. Compl. ¶¶ 1, 21. Mr. Lyman's telephone number is 617-512-XXXX, which he alleges is a residential telephone number used for "residential" and "personal" purposes. *Id*. ¶¶ 12–13. This number is not associated with a business. *Id*. ¶ 14.

In 2005, Mr. Lyman registered 617-512-XXXX with the Do Not Call Registry. *Id.* ¶ 15. Despite registering his number, QuinStreet called and texted him to solicit business for their insurance services "on at least August 31, 2023." *Id.* ¶ 16. Mr. Lyman alleges that QuinStreet uses technology that allows the calls to appear as if they are local and from within the caller's area code. *Id.* ¶ 19. QuinStreet called him from the Caller ID 617-826-1969, and Mr. Lyman alleges that others have complained about receiving calls from that same number. *Id.* ¶¶ 17, 18 (citing https://800notes.com/Phone.aspx/1-617-826-1969). On August 31, 2023, Mr. Lyman received the below text message from 616-716-8134, which he attributes to QuinStreet:



*Id.* ¶ 20. Returning a call to "this number" indicated that it was owned by QuinStreet's

1  insurance.com. *Id.* ¶ 22. Before commencing this action, Mr. Lyman "wrote to the Defendant regarding the telemarketing conduct" and "Defendant did not deny that they made the calls." *Id.* ¶¶ 24–25.

Mr. Lyman alleges that QuinStreet violates the TCPA by making telemarketing calls to individuals on the Do Not Call Registry and that QuinStreet's acts and omissions were negligent, willful, or knowing. *Id.* ¶¶ 36–37. On these grounds, he asserts that he and members of the putative class are presumptively entitled to an award of $500 for each negligent violation and $1,500 for each knowing and willful violation. Mr. Lyman also seeks an injunction barring QuinStreet from making calls to numbers on the Do Not Call Registry. *Id.* ¶¶ 38–39.

QuinStreet's motion to dismiss was noticed for hearing on February 29, 2024. The Court took the motion under submission without oral argument. On July 9, 2024, QuinStreet filed a statement of recent decision in support of its motion and a copy of *Loper Bright Enterprises v. Raimondo*, No. 22-451, 603 U.S. ___ (June 28, 2024). Dkt. No. 39. On July 10, 2024, Mr. Lyman filed a statement of recent decision and a copy of *Cacho v. McCarthy & Kelly LLP*, No. 23-CV-11157 (LJL), 2024 WL 3293628 (S.D.N.Y. July 3, 2024). Dkt. No. 40.

## II.   Statutory and Regulatory Background

Section 227(c) of the TCPA directs the Federal Communications Commission (FCC) to promulgate regulations "to implement methods and procedures for protecting the privacy rights" of "residential telephone subscribers." 47 U.S.C. § 227(c)(1)–(2). Section 227(c) further directs the FCC to promulgate regulations permitting the establishment of a do-not-call registry and national database compiling "a list of telephone numbers of residential subscribers who object to receiving telephone solicitations" and prohibiting telephone solicitation to "any subscriber included in such database." 47 U.S.C. § 227(c)(3).

The FCC's implementing regulations provide:

> No person or entity shall initiate any telephone solicitation to: …
> (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database

3

administrator.

47 C.F.R. § 64.1200(c).

47 C.F.R. § 64.1200(e) provides:

> The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02–278, FCC 03–153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."

The 2003 TCPA Order—incorporated into regulations by 47 C.F.R. § 64.1200(e)—creates a presumption that a cell phone registered on the Do Not Call Registry is a residential phone:

> As a practical matter, since determining whether any particular wireless subscriber is a "residential subscriber" may be more fact intensive than making the same determination for a wireline subscriber, we will presume wireless subscribers who ask to be put on the national do-not-call list to be "residential subscribers." Such a presumption, however, may require a complaining wireless subscriber to provide further proof of the validity of that presumption should we need to take enforcement action.

*In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

## LEGAL STANDARD

Under Rule 12(b)(6), the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). The pleadings must nonetheless allege facts that would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions "can provide the complaint's framework," but the Court will not assume they are correct unless adequately "supported by factual allegations." *Id.* at 679.

## ANALYSIS

**I.     The Court Strikes the Parties' Supplemental Submissions.**

QuinStreet's statement of recent decision, Dkt. No. 39, and Mr. Lyman's statement of recent decision, Dkt. No. 40, both violate Civil L.R. 7-3(d), which bars the filing of

4

1 supplemental material without court approval after the noticed hearing date. Accordingly, the

2 Court strikes both submissions. The Court nonetheless takes judicial notice of both *Loper Bright*

3 *Enterprises v. Raimondo*, No. 22-451, 603 U.S. ___ (June 28, 2024), and *Cacho v. McCarthy &*

4 *Kelly LLP*, No. 23-CV-11157 (LJL), 2024 WL 3293628 (S.D.N.Y. July 3, 2024). *See* Fed. R.

5 Evid. 201(c)(1).

## II. QuinStreet's Motion is Denied.

Mr. Lyman has adequately stated a claim under the TCPA. To state a claim under 47 U.S.C. § 227(c), the plaintiff must allege that he (1) is a residential telephone subscriber who (2) registered that telephone number with the Do Not Call Registry, and (3) nonetheless received an unsolicited call to that number initiated by a person or entity. 47 C.F.R. § 64.1200(c)(2).

Here, Mr. Lyman alleges first that his telephone number, 617-512-XXXX, is a residential number used for "residential" and "personal" rather than business purposes. Second, he registered that phone number with the Do Not Call Registry in 2005. Third, he asserts that QuinStreet engaged in unsolicited telephone calls and text messages to him regarding its insurance services on at least August 31, 2023.

Although Mr. Lyman has pleaded each of the elements of a § 227(c) claim, QuinStreet contends that Mr. Lyman has failed to plead that his phone number is a "residential telephone" because the term does not encompass cell phones like the phone associated with Mr. Lyman's phone number. Its argument, however, is contrary to both binding Ninth Circuit precedent and the applicable regulation.

In *Chennette v. Porch.com, Inc.* 50 F.4th 1217 (9th Cir. 2022), the Ninth Circuit held that cellular phones used for both personal and business purposes were presumptively residential for the purposes of § 227(c). *Id.* at 1124–26. To be certain, as QuinStreet notes, the defendants in *Chennette* had conceded that cellular phones could be considered "residential" in certain circumstances and merely argued that the plaintiffs' use of their phones for both business and personal purposes rendered them non-residential. But the Court's holding was premised on the conclusion (shared by all three judges, including the dissenting judge, *see id.* at 1237 (Ikuta, J., dissenting)) that § 227(c) could encompass cellular phones in at least some circumstances.

As *Chennette* recognized, the implementing regulations adopted by the FCC pursuant to Congress's express demand also reject QuinStreet's position and instead create a presumption that a cell phone registered on the Do Not Call Registry is a residential phone. 47 C.F.R. § 64.12000(e).

QuinStreet urges the Court to disregard both *Chennette* and the FCC's regulations on the ground that they are contrary to the applicable statutory text. But nothing in the text compels such a result. Although Congress addressed both "cellular telephone service[s]" and "residential telephone line[s]" in § 227(b), those categories are not mutually exclusive. One group is simply defined by the technology used by the service to enable phone calls (cellular as opposed to landline) while the other is defined by the type of subscribers using the service (residential as opposed to business or other non-residential subscribers). As the concurrence in *Chennette* noted, the language in § 227(b) upon which QuinStreet relies can just as easily be interpreted to suggest that Congress chose *not* to exclude cellular telephones from coverage under § 227(c). 50 F.4th at 1227 (Bress, J., concurring).

Nor do the different restrictions imposed upon calls to cellular telephone services and calls to residential subscribers under § 227(b) suggest that the categories are mutually exclusive. Section 227(b)(1)(A)(iii) prohibits calls to lines associated with cellular telephones "using any automatic telephone dialing system or an artificial or prerecorded voice," while Section 227(b)(1)(B) more narrowly prohibits initiating calls to residential subscribers "using an artificial or prerecorded voice to deliver a message." That the former provision imposes a broader restriction based on the technology used while the latter imposes a narrower restriction based on the nature of the user does not mean that the two groups cannot overlap. Indeed, the statutory text suggests that the reason cellular phone lines were subjected to broader restrictions was that recipients of calls on such lines were generally charged for the call. *See* 47 U.S.C. § 227(b)(1)(A)(iii) (applying restrictions to telephone numbers assigned to "any service for which the called party is charged for the call"). By contrast, Congress chose to impose the restrictions of § 227(b)(1)(B) on all calls to residential subscriber lines in order to protect their privacy interests rather than their pocketbooks.

1 QuinStreet's interpretation of Section 227(c) is also contrary to Congress's purpose in
2 enacting the TCPA. That section's express aim was to protect "residential telephone subscribers'
3 privacy rights to avoid receiving telephone solicitations to which they object." Those privacy
4 interests do not depend upon whether the undesired telephone solicitations are received on a
5 cellular phone rather than on a landline. *See also Chennette*, 50 F.4th at 1229 (Bress, J.,
6 concurring) ("A fair reading of the 2003 TCPA Order shows that the FCC was concerned with
7 protecting consumers generally, regardless of where they happened to be when an unwanted call
8 reached them.").

9 Finally, the Court accords due respect to the FCC's interpretation under pre-*Chevron*
10 principles. *See Loper Bright Enterprises v. Raimondo*, No. 22-1219, 2024 WL 3208360, at *9
11 (U.S. June 28, 2024). As the Court has done here, the Court needs only "independently identify
12 and respect such delegation[] of authority, police the outer statutory boundaries of [that
13 delegation], and ensure that [the agency exercises its] discretion consistent with the APA." *Loper*,
14 2024 WL 3208360, at *17. Here, Congress has expressly conferred discretionary authority on the
15 agency to flesh out the TCPA. *See* 47 U.S.C. § 227(c). Using its discretion within the boundaries
16 of its delegation, the agency has created a presumption that a cell phone registered on the Do Not
17 Call Registry is a residential phone, a presumption that has lasted for more than two decades. *See*
18 47 C.F.R. § 64.12000(e). The FCC's interpretation "rests on factual premises within the agency's
19 expertise," thus giving its interpretation "particular power to persuade, if lacking power to
20 control." *Loper*, 2024 WL 3208360, at *17 (cleaned up). In this context, it is "especially
21 informative" and particularly persuasive. *Id.* In any event, however, the Court would reach the
22 same conclusion in the absence of any FCC interpretation of the TCPA's statutory text.

23 In short, the Ninth Circuit's decision in *Chennette* and the FCC's regulations squarely hold
24 that cellular telephone users can be considered "residential telephone subscribers" for the purposes
25 of §227(c). The Court is bound to follow *Chennette*, but even if it were not, the statutory text does
26 not support QuinStreet's position, and instead is best read to include at least some cellular phone
27 subscribers within the category of "residential telephone subscribers." Because QuinStreet makes
28 no other arguments regarding the sufficiency of Mr. Lyman's complaint, its motion to dismiss

must be denied.

## CONCLUSION

For the foregoing reasons, the Court denies QuinStreet's motion to dismiss.

**IT IS SO ORDERED.**

Dated: July 12, 2024

_____
P. Casey Pitts
United States District Judge